# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

|  |  |  |
|---|---|---|
| **MEMPHIS PUBLISHING COMPANY,** | ) | Davidson County Chancery Court |
|  | ) | Docket No. 92-1435-I |
| Petitioner/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 01A01-9607-CH-00300 |
|  | ) |  |
| **TENNESSEE PETROLEUM** | ) |  |
| **UNDERGROUND STORAGE TANK** | ) |  |
| **BOARD and J. W. LUNA, AS** | ) |  |
| **COMMISSIONER OF TENNESSEE** | ) |  |
| **DEPARTMENT OF ENVIRONMENT** | ) |  |
| **AND CONSERVATION**. | ) |  |
|  | ) |  |
| Respondents/Appellants. | ) |  |
|  | ) |  |

**FILED**

**May 9, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Chancery Court of Davidson County at Nashville.
**Honorable Irvin H. Kilcrease, Chancellor**

**John Knox Walkup**, Attorney General and Reporter
**Barry Turner**, Deputy Attorney General
Attorneys for Respondents/Appellants.

**S. Russell Headrick**,
**Stephen P. Hale**,
**Lucian T. Pera**,
**Kathy Laughter Laizure**,
ARMSTRONG, ALLEN, PREWITT, GENTRY, JOHNSTON & HOLMES,
Memphis, Tennessee
Attorneys for Petitioner/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**LILLARD, J.** : (Concurs)

This case is on appeal for the second time. The Tennessee Petroleum Underground Storage Tank Board and J. W. Luna, as Commissioner of the Tennessee Department of Environment and Conservation (hereinafter "Board" or "Appellants"), have appealed from the judgment of the trial court declaring the appellee, Memphis Publishing Company (MPC), eligible for reimbursement from the Tennessee Petroleum Underground Storage Tank Fund (Fund) for remediation expenses incurred as a result of a release from its underground storage tank in August 1987. The trial court's decision came after remand from the Middle Section of this Court in *Memphis Publishing Company v. Tennessee Petroleum Underground Storage Tank Board*, No. 01A01-9305-CH-00202, 1993 WL 476292 (Tenn. App. Nov. 19, 1993), *perm. app. denied*, c.r.o. There, the court confronted the issue of whether MPC had a right to Fund reimbursement under the Tennessee Petroleum Underground Storage Tank Act (Act), T.C.A. § 68-215-101 *et seq.*, as originally enacted. [1] It was argued that MPC had no right to reimbursement because its release occurred prior to the effective date of the Act, July 1, 1988. This Court, speaking through Judge Lewis, held that the Act, as originally enacted, "was intended to cover, from a Fund reimbursement perspective, all releases regardless of date." Upon remand, the trial court held the court of appeal's decision "law of the case" and ruled as hereinabove set forth. It is urged on appeal that the decision rendered in *Memphis Publishing* is not the "law of the case" regarding MPC's Fund eligibility and that the trial court erred in so holding. For reasons hereinafter stated, we affirm.

The underlying facts of this case are amply set forth in *Memphis Publishing*. For our purposes, we reiterate here as follows: In September 1990, MPC filed an application with the Board for reimbursement from the UST Fund for assessment and remediation expenses incurred in connection with a release at its UST site. MPC discovered and reported the release prior to July 1, 1988, but the majority of its assessment and remediation efforts occurred afterwards. After a contested case hearing, the Board denied MPC's claim and issued a final decision and order finding that MPC was not Fund eligible because its release had occurred prior to the Act's effective date. MPC sought judicial review in the chancery court, requesting, *inter alia*, that the court declare the amendment to the original Act violative of both the Fourteenth Amendment and state constitution

_____

[1]The Act was amended in April 1990 to read: "[i]t is the intent of the general assembly that this chapter shall not apply retroactively to releases or other events that occurred prior to July 1, 1988." T.C.A. § 68-215-102(c).

and representative of prohibited retrospective legislation. The chancellor perceived the issue before it as "[w]hether the provisions of T.C.A. § 68-215-102(c), which were part of the 1990 amendment to the UST Act, constitute unconstitutional retrospective legislation?" In affirming the decision of the Board, the chancellor held, in part, as follows:

> The UST Act became effective July 1, 1988. . . .
>
> . . . .
>
> The UST Act was amended in April of 1990. The amendment supports the legislative intent that the UST Act is not to apply to releases which occurred prior to the effective date of July 1, 1988. It states that "[i]t is the intent of the general assembly that this chapter shall not apply retroactively to releases or other events that occurred prior to July 1, 1988." *See* T.C.A. § 68-215-102(c).
>
> The petitioner submits that it had a vested right to claim reimbursement from the fund established by the UST Act, and that the 1990 amendment impairs this right. The provisions of the Act establishing the UST Fund create new substantive rights, and cannot be retroactively applied. ***See Anderson v. Memphis Housing Authority***, 534 S.W.2d 125, 127 (Tenn. App. 1975). The provision added by the 1990 amendment simply confirmed and ratified the original intent of the General Assembly that the UST Act is not to be given retrospective application.
>
> It is undisputed that MPC discovered and reported the release from its underground storage tank in August of 1987. The Department has consistently followed its policy of using the date of the discovery of the release as the applicable date under the UST Act. MPC's actions took place well before the effective date of the UST Act on July 1, 1988. This Court concludes that MPC never had a vested right to claim reimbursement from the fund because the Act does not apply to releases, like MPC's, that occurred prior to the July 1, 1988 effective date of the Act.[2]

MPC appealed from the chancellor's decision[3] and, as noted, this Court, upon review,

---

[2]This portion of the chancellor's decision is set forth verbatim in the ***Memphis Publishing*** opinion. ***Memphis Publishing***, 1993 WL 476292 at *2.

[3]Pursuant to Rule 24(b) T.R.A.P., MPC submitted a "statement of issues to be presented on appeal," identifying the issues it intended to present for appellate review as follows:

> 1. Whether the trial court erred in holding that appellant had no right to reimbursement from the Tennessee Petroleum Underground Storage Tank Fund ("Fund") under chapter 984 of the Tennessee Public Acts of 1988 (the "Original Act").
> 2. Whether the trial court erred in construing Tenn. Code Ann. §§ 68-53-101 to - 128 (the "Act"), as amended in 1990, to limit reimbursement from the Fund to expenses incurred in connection with releases that occurred after July 1, 1988, the effective date of the Original Act.
> 3. Whether the trial court erred in finding that the 1990 amendment (1990

reversed. We quote from the court's decision in ***Memphis Publishing*** as follows:

> MPC presents the following issue for our consideration: "Whether the trial court erred in holding that MPC had no right to reimbursement from the Fund under the Original Act," which became effective 1 July 1988. . . .
>
> . . . .
>
> We find nothing in the sweeping nature of the perceived problems addressed by the Original Act, the description of the comprehensive regulatory mechanism, nor the description of the broad purposes of the Fund, to suggest or imply any date limitation on the "releases" covered under the Original Act.
>
> . . . .
>
> The enforcement authority created by the Original Act is not limited to releases commencing after its effective date. . . .
>
> . . . .
>
> Both the Board and the Chancellor, in determining that MPC was not entitled to recover, relied on the 1990 Amendment which set forth the general assembly's "intent" to restrict recovery to releases or other events which occurred after 1 July 1988.
>
> While a later general assembly's understanding of what an Act intended is not binding, it is entitled to deference. ***See, United States v. Stauffer Chem. Co.***, 684 F.2d 1174, 1187 (6th Cir. 1982), ***aff'd***, 464 U.S. 165 (1984). Legislative interpretation of a prior statute is entitled to respectful consideration, but is not controlling on the courts. ***Interstate Life & Accident Co. v. Hunt***, 171 Tenn. 119, 126, 102 S.W.2d 55, 56 (1937).
>
> Following the fundamental rule of statutory construction, this court must ascertain and give effect to the intention or purpose of the legislature as expressed in the statute. ***Parkridge Hospital, Inc. v. Woods***, 561 S.W.2d 754, 755 (Tenn. 1978).
>
> We are of the opinion that the legislature intended to cover all releases without regard to the date on which they may have occurred.
>
> . . . .

---

Tenn. Pub. Acts 399, ch. 855, § 1) to the Original Act is not unconstitutional retrospective legislation.

　　4. Whether the trial court erred in relying upon inadmissible and irrelevant evidence of legislative intent in aid of its construction of the Act and the Original Act.

　　5. Whether the trial court erred in finding that MPC is not "fund eligible" under the Act.

　　6. Whether respondents acted arbitrarily and capriciously in denying appellant's application for reimbursement from the Fund based on their inconsistent application of the Act respondent's regulations.

　　7. Whether respondents' inconsistent application of the Act and respondents' regulations to appellant is unconstitutional in that it violated appellant's Tennessee and federal constitutional rights to equal protection.

. . . we find nothing in the effective date provision of the Original Act to suggest that it was not to be applied to releases or events occurring prior to 1 July 1988. . . . Significantly, neither of the two sections of the Original Act that establishes the Fund and grants to MPC and others a right to reimbursement for certain remediation expenses, in any way limits the availability of reimbursement to those expenses relating to releases commencing before or after a certain date. . . .

The Original Act was intended to cover, from a Fund reimbursement perspective, all releases regardless of date. . . . This issue is sustained.

Because of our holding regarding this issue, we pretermit all other issues raised by MPC. The judgment of the trial court in affirming the decision of the Board and Commissioner is reversed and the cause remanded to the trial court for further, necessary proceedings.

*Memphis Publishing*, 1993 WL 476292 at *4-7.

The Board's application for permission to appeal to the supreme court was denied, concurring in results only. Upon remand to the chancery court, MPC filed a motion "for order reversing final decision and order of the [Board] and remanding cause to Tennessee Department of Environment and Conservation" with the directive that the Department reimburse MPC its reasonable and necessary remediation expenses from the Fund. An "agreed order" was then entered with the trial court wherein the parties waive remand back to the Board and agree to submit the matter, upon the existing administrative record, to the chancery court's jurisdiction "to resolve the issues remaining." Pursuant to the order, the issues to be resolved were: "(1) whether MPC's right to reimbursement from the [Fund] vested prior to the effective date of [§ 68-215-102(c)] and (2) whether MPC's application for reimbursement is fund eligible under applicable law."

Upon review, the chancellor entered its "Final Judgment and Order After Remand," declaring MPC's application for reimbursement Fund eligible and remanding the matter to the Board for review of MPC's application for the sole purpose of determining the reasonableness of its claimed expenses. The court found:

MPC asserts that the Court of [Appeals'] opinion is the "law of the case" on remand. This Court agrees. The decision of the Court of Appeals makes it clear that the petitioner's release is to be covered regardless of the date on which the release occurred. The Supreme

Court's concurrence "in results only" does not change this fact.

Appellants identify the issues on this appeal as follows:

> 1. Is this Court's prior decision "Law of the Case" when in response to an application for permission to appeal that decision, the supreme court denied the application, but concurred only in the result reached by this Court?
>
> 2. If this Court implicitly ruled in its prior decision that [MPC] had a vested right to reimbursement that is unconstitutionally impaired by Tenn. Code Ann. § 68-215-102(c), is this implicit constitutional ruling "Law of the Case"?
>
> 3. Did the contingent statutory right to reimbursement conferred by the retroactive application of the UST fund in 1988 become a constitutionally recognized "vested right" before § 68-215-102(c) went into effect?
>
> 4. In 1990, the general assembly amended the UST Act by adding § 68-215-102(c), which expressly provides that no provision of the Act shall apply retroactively to a release that occurred prior to July 1, 1988. Does this statute unconstitutionally impair vested rights in violation of the state or federal constitution?

It is the Board's position that the prior decision of this Court cannot constitute the "law of the case" for reasons that: (1) the Tennessee Supreme Court disposed of its application for permission to appeal by concurring only in the results reached by the court of appeals and (2) any decision rendered by the intermediate court regarding the constitutional "vested rights" issue and the constitutionality of § 68-215-102(c) was, at most, implicitly decided. As to the latter, it is argued that an implicit decision regarding the constitutionality of a duly enacted law of the legislature should not be afforded "law of the case" status. Appellants further assert that it is more likely that these were issues expressly pretermitted by the court.

As to the first ground, Appellants rely upon *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327 (Tenn. App. 1985). *Clingan* ruled that a prior decision of the court of appeals was not law of the case, in part, because the supreme court had denied the defendant's permission to appeal, concurring in results only. *Clingan*, 694 S.W.2d at 331. *Clingan* also expressed an additional reason for its decision. Under the facts in *Clingan*, the court of appeals' prior decision reversed the trial court's entry of summary judgment in favor of the defendant, finding that there were issues of

fact that should be submitted to a jury. On remand, the case was tried before a jury. At the close of proof, the defendant moved for a directed verdict which was denied by the trial court. The jury returned a verdict for the plaintiff. On the second appeal, the defendant raised the issue of the trial court's alleged error in denying the motion for directed verdict. *Id*. at 329. The plaintiffs relied upon the supreme court case of *Life & Casualty Insurance Co. v. Jett*, 133 S.W.2d 997 (Tenn. 1939), to argue that the court of appeals' prior decision was "law of the case," precluding the trial court's directing of a verdict for the defendant.

*Jett* involved two trials. *Id*. at 331. After the first, a verdict was directed for the defendant. Upon appeal, the court of appeals reversed the trial court finding factual questions for a jury's determination. A second trial resulted in a verdict for the plaintiff. On appeal to the supreme court, that court held that the first opinion of the court of appeals was the law of the case on the second trial as the evidence in both trials was the same, thus, precluding the trial court from doing anything other than submitting the factual issues to the jury for determination. *Id*.

The court in *Clingan* expressed its agreement with the *Jett* holding, but distinguished the case before it by noting that in *Jett*, "[t]he verdict was directed in the first case after a trial on the facts which the court found to be substantially the same in both cases. In the case at bar summary judgment was granted without a trial on the merits." *Id*. To the extent that *Clingan* stands for the proposition that a decision in a prior appeal only becomes the law of the case in subsequent stages of the litigation where the facts, issues and evidence in the later actions are substantially the same as those before the court in the prior appeal, we agree. *See Leo Eisenberg & Co. v. Payson*, 785 P.2d 49, 53 (Ariz. 1989). However, as to whether the supreme court's denial of an appeal, concurring in results only, precludes the intermediate court's decision from becoming the law of the case, we agree with the rationale expressed in *Ladd v. Honda Motor Co*., 939 S.W.2d 83 (Tenn. App. 1996). This Court, speaking through Judge Koch, discussed the law of the case doctrine at length as follows:

> The law of the case doctrine is a discretionary rule of practice that promotes judicial economy and consistency and also protects litigants from the burdens of repeatedly rearguing issues that have been decided. 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4478, at 788-90 (1981). It is not a limitation on a

court's power like the doctrine of res judicata, but rather it is a common sense recognition that issues ordinarily need not be revisited once they have been litigated and decided. *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740 (1912); *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed.Cir.), *cert. denied*, 115 S.Ct. 582 (1994).

Under the law of the case doctrine, an appellate court's decision on an issue of law becomes binding precedent to be followed in later trials and appeals of the same case involving the same issues and facts. *Jones v. Jones*, 784 S.W.2d 349, 351 n. 1 (Tenn.Ct.App.1989); *Cook v. McCullough*, 735 S.W.2d 464, 470-71 (Tenn.Ct.App.1987) (quoting *Holcomb v. McClure*, 64 So.2d 689, 691 (Miss.1953)); 1B James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 0.404[1] (2d ed.1995). The doctrine applies to issues that were actually before the court, *Barnes v. Walker*, 191 Tenn. 364, 374, 234 S.W.2d 648, 652 (1950), or to issues that were necessarily decided by implication. 18 Wright et al., *supra*, § 4478, at 789. It does not apply to dicta. *Ridley v. Haiman*, 164 Tenn. 239, 248-49, 47 S.W.2d 750, 752-53 (1932); *Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 101 (Tenn.Ct.App.1984). . . .

The application of the law of the case doctrine to intermediate appellate court opinions does not necessarily depend upon whether the opinion has been reviewed by the Tennessee Supreme Court. The doctrine has been applied to decisions that have not been reviewed by the Supreme Court, *Bivins v. Hospital Corp. of Am.*, 910 S.W.2d 441, 447 (Tenn.Ct.App.1995), as well as to decisions that the Supreme Court has declined to review. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *State ex rel. Kirkpatrick v. Tipton*, 670 S.W.2d 224, 226 & n. 5 (Tenn.Ct.App.1984). Obviously, it does not apply to intermediate appellate court opinions that have been reversed or vacated. While some question exists with regard to its application to intermediate appellate court decisions that the Supreme Court has declined to review "concurring in results only," we conclude that the doctrine applies to these cases because the decision to concur only with the results of an opinion simply "evinces . . . [the] Court's judgment that the opinion of the . . . [intermediate appellate court] should not be published." *Pairamore v. Pairamore*, 547 S.W.2d 545, 548 (Tenn.1977).[4] These decisions still have precedential value with regard to the parties involved in the case. *Patton v. McHone*, 822 S.W.2d 608, 615 n. 10 (Tenn.Ct.App.1991).

*Ladd*, 939 S.W.2d at 90-91. (Footnotes omitted.) We conclude that the supreme court's denial of

---

[4]We note that Rule 4(4) of the Supreme Court Rules provides:

**PUBLICATION OF OPINIONS--CITATION OF UNPUBLISHED OPINIONS**

. . . .

No opinion of the Court of Appeals or the Court of Criminal Appeals shall be published until after the time has expired for the filing of an application for permission to appeal. If this Court grants the application, or denies the application, concurring in result only, the opinion of the intermediate court shall not be published.

the Board's permission to appeal from this Court's prior decision, by concurring with the results only, does not preclude the decision from becoming the law of the case.

The Board also contends that the law of the case doctrine cannot apply to the constitutional issues raised because they were either not decided ("pretermitted") or determined only by implication. To this end, the Board asserts that we are not precluded from further review of these issues because issues regarding the constitutionality of legislative enactment cannot be decided by implication but must be determined by the showing of "a clear analysis of how that law contravenes the constitution." It is the position of MPC that the issues were implicitly decided. MPC argues that throughout the entire litigation, it has maintained that it had a vested right to reimbursement under the Act as originally enacted and that the 1990 amendment was an unconstitutional deprivation of that right.

*Ladd* holds that the law of the case doctrine applies to those issues necessarily decided by implication. No exception is noted for those issues of a constitutional nature. Appellants can point to no Tennessee case directly confronting the issue, but cite cases from various other jurisdictions in support of their contention. First, in *Kleinbart v. United States*, 604 A.2d 861 (D.C. App. 1992), the "merits division" of the court refused to apply the law of the case doctrine to a "summary affirmance" of a pretrial detention order by the "motions division" of the court. The court found that the issue (the standard of proof required in ordering pretrial detention based on risk of flight) was not "thoroughly aired and definitively resolved" previously. *Kleinbart*, 604 A.2d at 867. *Kleinbart* identified three reasons why it would not apply the doctrine: (1) the prior proceeding was a "*sua sponte* summary affirmance" of a detention order, absent a government request for such relief or even a government response to the defendant's argument on the issue in his motion for summary reversal; (2) the prior ruling was "an implicit appellate ruling on the issue in a summary proceeding without articulation of any supporting reason;" and (3) the ruling had "significant constitutional implications." *Id*.

In *United States v. Ferri*, 686 F.2d 147 (3rd Cir. 1982), the appellee argued that the prior decisions of the Supreme Court and court of appeals remanding the case was an implicit determination that the district court had jurisdiction to consider the appellee's claim, thus, invoking

the law of the case doctrine on the issue of jurisdiction. *Ferri*, 686 F.2d at 157. *Ferri* held:

> There is . . . no indication that the Supreme Court specifically considered the jurisdictional issue presently before us. . . . Although [the appellee] is correct, as the government concedes, that the jurisdictional argument was presented to this court in the government's petition for rehearing of our [decision to remand to the district court], our summary denial of that petition cannot be viewed as a determination, sufficient to trigger law of the case consequences, that the district court had jurisdiction to consider [the appellee's] claim.

*Id*. We do not find the foregoing dispositive of the issue as both cases involve "summary" proceedings where no reason at all is articulated for the courts' rulings.

Appellants also direct our attention to *United States v. Curtis*, 683 F.2d 769 (3rd Cir. 1982), where the court refused to apply the law of the case doctrine to the issue of the defendant's constitutional right against double jeopardy. The prior decision of the court involved consideration of the defendant's conviction, resulting in a remand for a new trial. *Curtis*, 683 F.2d at 771. *Curtis* found that the order for new trial "could be viewed as an implicit determination that, notwithstanding the double jeopardy clause or any other constitutional or statutory provision, a new trial was permissible and appropriate in [the defendant's] case." *Id*. *Curtis*, however, found that there was "no advertence" in the court's prior opinion regarding the double jeopardy concerns and thus, "no evidence" that the court specifically considered those concerns when ordering a new trial. *Id*. at 772. The court also noted that neither party had argued the double jeopardy issue before the first panel of the court. *Id*. *Curtis* held that it would not "infer rejection of an allegation of a constitutional violation in the absence of some judicial statement that the contention has been considered and rejected." Thus, the court would "not conclude that [the defendant's] double jeopardy claim was definitively resolved by the order of this Court on his initial appeal." *Id*.

Finally, in *Locricchio v. Evening News Ass'n*, 476 N.W.2d 112 (Mich. 1991), the Michigan Supreme Court refused to uphold the intermediate court's application of the law of case doctrine to its prior decision involving the denial of a summary judgment motion. After denial, the plaintiffs' case for libel proceeded to a jury trial with a verdict being rendered in favor of one of the plaintiffs. The trial court, however, directed a verdict for the defendant. On appeal, the intermediate

court applied the law of the case doctrine to its prior opinion on summary judgment and reversed the trial court. *Locricchio*, 476 N.W.2d at 114. *Locricchio* held that the court of appeals erred in relying on the law of the case doctrine "instead of independently reviewing the record in a libel case of First Amendment import." *Id*. at 115. The court continued:

> [I]n a libel case affecting constitutionally protected public discourse, . . . the law of the case doctrine must yield to a competing doctrine: the requirement of independent review of constitutional facts.
>
> The determination on summary judgment that the plaintiffs' complaint stated a cause of action for defamation by implication should not have abrogated the appellate court's duty to independently review the record to determine whether, in fact, the plaintiffs carried their burden of proof at trial regarding falsity at the post-trial directed verdict stage.

*Id*. at 123. (Footnotes omitted.) We find the proceedings in *Locricchio* somewhat akin to those in *Clingan*, with both yielding similar results. We, however, do no find *Locricchio* dispositive of the issue before us.

After careful review, we find that the constitutional issues ("vested rights" and constitutionality of § 68-215-102(c)) were squarely before this Court for decision in the first appeal of this case. The issues had been argued to and expressly addressed by the trial court and presented as issues for appellate review. The trial court, in its initial decision, expressly states the position of MPC from the standpoint that it believed it had a vested right of Fund reimbursement and that the amendment was an unconstitutional deprivation of that right. Moreover, this Court's opinion in *Memphis Publishing* makes clear that the court considered the effect of the 1990 amendment on MPC's right to reimbursement when stating the positions of the Board and the chancellor in denying MPC a right to recover on the basis of the amendment. Acceptance of the Board's position that the appellate court did not decide these issues requires the conclusion that the case was remanded to the trial court for a determination of an issue it had previously decided in the Board's favor, that MPC "never had a vested right to claim reimbursement from the fund." A determination regarding these issues by the court of appeals was essential in its decision to reverse the trial court. Unlike *Curtis*, where there was uncertainty as to whether the issue had even been addressed, here the only plausible construction of the appellate court's decision is that the issues were implicitly decided. Any other

construction would render the prior decision of this Court meaningless and result in an incomplete resolution of the issues squarely before it. Accordingly, we conclude that the law of the case doctrine applies to this appeal and that we are therefore precluded from considering the latter issues raised by Appellants.

The judgment of the trial court is affirmed and this cause remanded to the trial court with instructions that the matter be remanded to the Board for a determination regarding the reasonableness and necessity of MPC's claimed expenses. Costs are assessed against Appellants, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)